**Affirmed and Opinion Filed June 29, 2018**

In The



**No. 05-17-00262-CV**

**RALPH RATHER AND ENEXCO, INC., Appellants**
**V.**
**AAA WELL SERVICE, LLC, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-02337**

## MEMORANDUM OPINION

Before Chief Justice Wright, Justice Bridges, and Justice Evans
Opinion by Justice Bridges

Ralph Rather and Enexco, Inc. appeal the trial court's judgment, following a jury trial, awarding AAA Well Service, LLC $34,464.64 on its breach of contract claim against Enexco and its piercing the corporate veil/alter ego claim against Rather individually. In four issues, Rather and Enexco argue the evidence is legally and factually insufficient to show they committed "actual fraud" and that "they did it primarily for Rather's direct personal benefit." We affirm the trial court's judgment.

Rather is the president and fifty percent owner of Enexco, an oil and gas operating company that previously operated wells in various parts of Texas. By the time of trial, Enexco had "pretty much shut down." Rather was also president and fifty percent owner of N&R Resources, Inc., a company that maintained working interests in a number of wells operated by other companies,

including some wells operated by Enexco. AAA provides workover rigs to already-drilled oil and gas wells and repairs the wells.

In 2010, N&R obtained 100% of the working interest on a lease in Hardeman County, Texas. N&R assigned seventy-five percent of the working interest to other non-operating working interest owners and retained twenty-five percent. N&R hired Enexco to operate the "Fowler Well" on the lease because N&R was not licensed to operate wells in Texas, but Enexco was a licensed operator. Enexco received overhead costs for serving as operator and assuming monetary risks associated with the well. Overhead costs included "taking care of all the accounting functions, all the regulatory functions" and "an overhead amount on a monthly basis after production was established." Rather testified that, because he was president and fifty-percent owner of both N&R and Enexco, it was to his benefit to hire an operator at the cheapest price possible. With respect to the Fowler Well, Enexco agreed to operate the well for only its overhead costs with no additional profit.

Rather testified that Enexco hired him individually to serve as a consultant in connection with the Fowler Well. AAA's counsel asked if Rather was paid $68,000 as a consultant on the Fowler Well. Rather denied being paid $68,000 and said he was paid "I think $3500." AAA's counsel showed Rather an October 11, 2013 settlement statement from Enexco used to show working interest owners the amounts they owed for their proportionate shares of ownership in the well. The statement showed a payment to Rather of $3000, which Rather did not deny receiving. However, Rather denied receiving payments of $27,601.35 and $20,115.61 that were listed on the statement. Rather testified he was not aware there were other settlement statements showing amounts charged by Enexco for Rather's invoices.

In December 2013, Rather contacted AAA, and Enexco thereafter contracted with AAA to provide a rig and crew to work the Fowler Well. Although AAA performed the work, Rather and

Enexco never paid. In February 2015, AAA sued Enexco and Rather asserting, among other things, a breach of contract claim against Enexco and a piercing the corporate veil/alter ego claim against Rather individually. In November 2016, the case was tried before a jury. AAA's operations manager, Deecye Bedell, testified AAA performed work on the Fowler Well in August and September 2013. Bedell had "a lot of discussions" with Rather about paying AAA before contracting with Enexco in December 2013, and Rather stated he "could and would pay AAA for its services." Bedell relied on Rather's statement in deciding to send a rig and crew to perform the services on the Fowler Well in December 2013, and AAA performed the work. Jin Chua, manager of AAA's accounting, testified an invoice for $34,464.64 was mailed to Enexco on January 22, 2014, but the invoice was never paid.

Rather testified that, "shortly before" AAA worked on the Fowler Well, Rather personally guaranteed payment to AAA by another company for which Enexco was doing a contract operating job. Rather testified he first received AAA's invoice in this case when he was served with AAA's lawsuit in February 2015. Rather testified that, in 2010, Enexco had "a well that had a significant cost overrun," and a number of investors left Rather "holding the bag." In 2011 and 2012, Enexco "had some outstanding debts and liabilities." As of November 2013, Rather testified "we had some problems because of the cost overrun and I was trying to remedy that by paying – I paid a lot of it out of my pocket." Rather testified he and his father "levered some of our assets with Enexco to pay the bills." Rather confirmed that Platinum Pipe Rentals made a claim for an unpaid amount of $21,535.59 as of October 15, 2013 and ultimately obtained a default judgment in that amount for work performed on the Fowler Well. Rather testified another vendor, Weatherford, had a balance due for work performed in August 2013. On April 28, 2014, Weatherford notified Rather that his account with Weatherford was closed because of a total past due balance of $11,366.31.

Rather testified that his brother Michael was not an employee of Enexco, but "on occasion he would be an independent contractor." Rather testified Michael charged $3065.27 to Enexco in connection with the Fowler Well. AAA's counsel referred Rather to a file he and Enexco produced showing invoices and receipts for charges billed to Enexco by Michael. The invoices showed Michael charged for, among other things, hotels, mileage on his personal vehicle, gasoline for his personal vehicle, $577.36 for tires for his personal vehicle, $207.99 for a tuneup of his personal vehicle, cigarettes, $219.73 for work boots, and a "double hot caramel sundae" from Braum's. Rather testified Enexco kept the invoices in Michael's "file of reimbursements," but Rather had "no idea" whether the invoices were actually paid to Michael. Rather testified that his son and Michael's son also worked on the Fowler Well, and they worked together on the same day to paint a "tank battery" and both charged for "those same services." AAA's counsel asked whether, if Enexco had "not been paying tens of thousands of dollars to [Rather], Michael Rather your brother, your nephew and your son," Enexco would have had enough money to pay AAA. Rather replied that "there was money there to pay AAA," but he "never received an invoice until two years later." Rather denied that Enexco knew by December 2013 "that its financial difficulties had put them in a position it was going to be winding down," and "rather than give up what assets it had to pay third-party creditors," Enexco "funneled that money out" to Rather, his brother, his nephew, and his son.

The jury found that AAA and Enexco agreed that AAA would perform work at the Fowler Well in exchange for payment, Enexco failed to comply with the agreement, $34,464.64 would fairly compensate AAA for its damages, and Rather was responsible for the conduct of Enexco. The trial court entered final judgment in that amount, plus interest and attorney's fees, against Enexco and Rather individually. This appeal followed.

In their first and second issues, Rather and Enexco argue the evidence is legally and factually insufficient to show they committed "actual fraud." In their third and fourth issues, they argue the evidence is legally and factually insufficient to show that, if they did commit actual fraud, they did it primarily for Rather's direct personal benefit. Because of the interrelated nature of these arguments, we address them together.

When reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *See Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton, Tex.*, 234 S.W.3d 814, 820 (Tex. App.—Dallas 2007, no pet.). We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). A "no evidence" point will be sustained if there is no more than a scintilla of evidence to support the finding. *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999). If the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about a vital fact's existence, more than a scintilla of evidence exists. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407; *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Solar Soccer*, 234 S.W.3d at 820. In conducting our review of both the legal and factual sufficiency of the evidence, we are mindful that the jury, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Keller*, 168 S.W.3d at 819.

Accordingly, the court of appeals may not pass upon the witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would clearly support a different result. *Maritime Overseas*, 971 S.W.2d at 407.

The trial court's charge measures the sufficiency of the evidence when, as here, the opposing party fails to object to the charge. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). Question number four of the court's charge, which asked if Ralph Rather was responsible for the conduct of Enexco, provided the following instructions:

> Ralph Rather is "responsible" for the conduct of Enexco, Inc. if Ralph Rather used Enexco, Inc. for the purpose of perpetrating and did perpetrate an actual fraud on AAA Well Service, LLC primarily for the direct personal benefit of Ralph Rather.
>
> OR
>
> Ralph Rather is "responsible" for the conduct of Enexco, Inc. if Ralph Rather used Enexco, Inc. as a means of evading an existing legal obligation for the purpose of perpetrating and did perpetrate an actual fraud on AAA Well Service, LLC primarily for the direct personal benefit of Ralph Rather.
>
> For purposes of this charge, "actual fraud" occurred if either:
>
> 1.(a) Enexco, Inc. concealed or failed to disclose a material fact within the knowledge of Enexco, Inc.; (b) Enexco, Inc. knew that AAA Well Service, LLC was ignorant of the fact and did not have an equal opportunity to discover the truth; (c) Enexco, Inc. intended to induce AAA Well Service, LLC to take some action by failing to disclose the fact; and (d) AAA Well Service, LLC suffered injury as a result of acting without knowledge of the undisclosed fact.
>
> OR
>
> 2. (a) Enexco, Inc. made a material misrepresentation; (b) the misrepresentation was made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion; (c) the misrepresentation was made with the intention that it should be acted on by AAA Well Service, LLC; and (d) AAA Well Service, LLC relied on the misrepresentation and thereby suffered injury.
>
> "Misrepresentation" means (a) false statement of fact or (b) a promise of future performance made with an intent, at the time the promise was made, not to perform as promised.

The jury answered this question "Yes."

The record shows that, by November 2013, Rather had financial troubles "because of the cost overrun," and Rather was paying "a lot of it out of [his] pocket." One vendor, Platinum Pipe Rentals, made a claim for an unpaid amount of $21,535.59 as of October 15, 2013 and ultimately obtained a default judgment in that amount for work performed on the Fowler Well. Rather testified another vendor, Weatherford, had a balance due for work performed in August 2013, and Weatherford closed Rather's account in April 2014 because of a total past due balance of $11,366.31. In this context, when Rather approached AAA to perform work on the Fowler Well, Bedell had "a lot of discussions" with Rather about paying AAA before contracting with Enexco in December 2013, but Rather stated he "could and would pay AAA for its services." Bedell relied on Rather's statement in deciding to send a rig and crew to perform the services on the Fowler Well in December 2013, and AAA performed the work.

Throughout this same time period in late 2013, Rather, president and fifty-percent owner of both N&R and Enexco, was using Enexco to operate the Fowler Well on a lease owned by N&R. Instead of operating at a profit to Enexco, Rather operated the Fowler Well in such a way that Enexco only received operating costs, and Rather was paid at least $50,000 as a "consultant." Rather's brother, nephew, and son also received payments for expenses associated with the Fowler Well and other, non-work-related expenses. The jury was free to disbelieve Rather's testimony that "there was money there to pay AAA" but he "never received an invoice until two years later." Chua testified AAA billed Enexco for its work on January 22, 2014. The record is clear that Enexco never paid AAA for its work. We conclude that the evidence is legally and factually sufficient to show that Rather and Enexco committed actual fraud and that they did it primarily for Rather's direct personal benefit. *See City of Keller*, 168 S.W.3d at 827; *Maritime Overseas*, 971 S.W.2d at 406-07. We overrule Rather and Enexco's first, second, third, and fourth issues.

We affirm the trial court's judgment.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

170262F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RALPH RATHER AND ENEXCO, INC.,
Appellants

No. 05-17-00262-CV      V.

AAA WELL SERVICE, LLC, Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-15-02337.
Opinion delivered by Justice Bridges. Chief
Justice Wright and Justice Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee AAA WELL SERVICE, LLC recover its costs of this appeal from appellant RALPH RATHER AND ENEXCO, INC.

Judgment entered June 29, 2018.